IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WATER QUALITY PROTECTION
COALITION, ET AL.

Plaintiffs,

v.

MUNICIPALITY OF ARECIBO

Defendant.

Civil No. 11-1593 (SEC)

**OPINION AND ORDER**

Before the Court are defendant's motion to dismiss (Docket # 9), and plaintiffs' opposition thereto (Docket # 11). After reviewing the filings and the applicable law, defendant's motion is **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**

Plaintiffs Angel Rodriguez, Agustin de Leon, and the unincorporated association called Water Quality Protection Coalition, (collectively, the "Coalition" or "Plaintiffs"), bring this citizen's suit against the Municipality of Arecibo (the "Municipality"), invoking this court's jurisdiction under § 505(a) of the Clean Water Act ("CWA" or the "Act"), 33 U.S.C.S. § 1365(a)). Seeking declaratory judgment, injunctive relief, "the imposition of civil penalties," as well as other remedies, the Coalition complains about the Municipality's systematic discharge "of storm water into navigable waters." Docket # 14, ¶ 1.

Because the Court is ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will draw the Coalition's well-pleaded facts from its amended complaint. Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 529 (1st Cir. 2011) (citation omitted), supplementing them with references to documents annexed to or fairly incorporated into it. Rederford v. U.S. Airways, Inc., 589 F.3d 30, 34 (1st Cir. 2009).

La Marginal, Margara, and Duhamel are three well-known beaches in Arecibo, Puerto Rico. Rodriguez and de Leon greatly enjoy these "surfing beaches in the Atlantic Ocean," not least because they spend "extended periods of time in their waters." Docket # 14, ¶ 6. For over seven years, the Municipality's faulty storm sewer system (the "System") has been aggravating the Coalition—as well as polluting the environment. Id., ¶ 7. According to the complaint, the System collects storm water and discharges it into several bodies of water. Id.

During heavy rains, the Municipality's outfalls discharge storm water and raw sewage into La Marginal, Margara, and Duhamel. Such discharges, Plaintiffs explain, produce an "insupportable foul odor that forces" them to abandon and avoid these beaches altogether. Id., ¶ 8. The storm water discharges, which occur several times per month, directly affect Plaintiffs' "recreational, aesthetic, and environmental interests." Id.  Pursuant to the Act, no discharge of storm water from a small municipal storm sewer system is authorized without complying with the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued by the United States Environmental Protection Agency (the "EPA"). Id., ¶ 11 (citing § 402(p) of the Act, 33 U.S.C.S. § 1342 (p)).

The System is currently operated under NPDES permit # PPR040000 issued by the EPA on November 6, 2006 (the "Permit"). Id., ¶ 12. The Permit required the Municipality, among other things, to implement the following six minimum measures designed to reduce the discharge of pollutants from the System into navigable waters:

    a) Implement and execute a public education program.

    b) Include the public in the development, implementation and review of the storm water management program.

    c) Develop, implement and enforce a program to detect and eliminate illicit discharges into its [System].

> d) Develop, implement and enforce a program to reduce pollutants in any storm water runoff to its [System] from construction activities that result in a land disturbance of greater than or equal to one acre.
>
> (e) Develop, implement and enforce a program to address storm water runoff from new development and redevelopment project that disturb greater than or equal to one acre, including projects less than one acre that are part of a larger common plan of development or sale, that discharge into its [System]
>
> f) Develop and implement an operation and maintenance program that includes a training component and has the ultimate goal of preventing or reducing pollutants runoff from municipal operations.

Id., ¶ 14 (citations omitted).

On February 7, 2008, and because of the Municipality's total failure to comply with the Permit's requirements, the EPA's Administrator issued order CWA-2-2008-3112 (the "Order"). Docket # 14-1, p. 7. The Order imposed upon the Municipality a series of deadlines. First, the EPA gave the Municipality ten days to submit a Notice of Intent to seek the Permit. Second, the Municipality was given ninety-five days to "develop and commence implementing a Storm Water Management Program," (the "Program") and to send a copy of it to the EPA. Id., p. 9. Finally, the Municipality had to submit to the EPA a report detailing, among other things, the costs of the Notice of Intent and the Program.

According to the complaint, although almost four years have passed since the Order's issuance, it has fell on deaf ears; the Municipality has failed to comply with most of the aforementioned deadlines. Docket # 14, ¶ 4. As a consequence, on February 22, 2011, the Coalition gave notice of the foregoing violations and its intent to file suit to the EPA Administrator, the Administrator of the EPA Region II, the Puerto Rico Environmental Quality Board, and the Municipality, as required by the CWA. Id., ¶ 3; see 33 U.S.C.S. § 1365(b)(1)(A).

The Coalition alleges that the Municipality continues to violate the Act and the Order, and that neither the EPA nor its Puerto Rico counterpart have done anything about it. Id., ¶ 4.

On January 11, 2011, however, the EPA sent a letter to the Municipality (the "Letter"), stating that the Program submitted by it on November 14, 2011 "[h]as satisfactorily set in place the *minimum* control measures required under the [NPDES] and the [Permit]." Docket # 19-1 (emphasis added). It added, moreover, that the Municipality "[m]ust continue to implement the [Program] and comply with the administratively extended general permit . . . ." Id.

Against this backdrop, on June 21, 2011, the Coalition filed the complaint giving rise to this action (Docket # 1). After the Municipality moved to dismiss (Docket # 9), plaintiffs filed an amended complaint on December 8, 2011 (Docket # 14). In it, they advance the following two claims for relief. First, the Coalition contends that the Municipality has failed to submit the Program within ninety-five days of the Order's issuance. Id., ¶¶ 21-27.[1] And second, although over four years have elapsed since the Order's issuance, the Municipality has yet to commence "[i]mplementing each of the six minimum control measures required under Part 4.2 of the Permit." Id., ¶ 29. It alleges, furthermore, that the Municipality has likewise failed to prepare an "annual review of [the] [Program]." And that these, as well as others instances of noncompliance, violate the Order.

On January 24, 2012, the Municipality moved to dismiss the amended complaint under both Fed. R. Civ. P. 12(b)(1) (for lack of subject matter jurisdiction) and 12(b)(6), maintaining that (1) because the Municipality "is already in compliance" with the Order, the Coalition's complaint has become moot; and (2) Plaintiff's suit is "preempted," since they have failed to

---

[1] In conformity with the EPA's above-discussed approval of the Program submitted by the Municipality on November 14, 2011, Plaintiffs "[a]ccept that the first claim for relief in the Amended Complaint is moot." Docket # 3, p. 20. Consequently, this claim is hereby **DISMISSED with prejudice**. See United States v. Puerto Rico, 642 F.3d 103, 109 (1st Cir. 2011) ("A court cannot hear an action that loses 'its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" (quoting Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004)) (quoting in turn Hall v. Beals, 396 U.S. 45, 48 (1969) (*per curiam*))).

**CIVIL NO. 11-1593 (SEC)**                                                                                          Page 5

allege sufficient facts to show the EPA's lack of diligence in enforcing the Order. Docket # 19, pp. 3-8. Alternatively, the Municipality requests a stay of proceedings to allow for the completion of a consent decree between the Department of Justice, the EPA, and the Municipality. Id., p. 9.

The Coalition opposes dismissal, arguing that "[i]t is still too early to end this case . . . because Plaintiffs are bound by the terms of the [Order] they want to enforce, and those terms have not been met." Docket # 20, p. 3. Rebutting the Municipality's diligent prosecution argument, the Coalition also contends that its complaint contains enough plausible allegations to show that the EPA's prosecution of the Order has been neither substantial nor ongoing. Id., p. 13. The Court addresses the Municipality's contentions *seriatim*.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559. Although complaints do not require detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. at 556.

In <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court reaffirmed <u>Twombly</u> and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See <u>Iqbal</u>, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. <u>Id.</u> at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. <u>Id.</u>

Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555); <u>see also</u> <u>Peñalbert-Rosa</u> v. <u>Fortuño-Burset</u>, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." <u>Ocasio-Hernandez</u> v. <u>Fortuño-Burset</u>, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. <u>Id.</u> A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. <u>Id.</u> at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. <u>Id.</u> at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. <u>Id.</u> at 1950.

For its part, Fed. R. Civ. P. 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction. <u>Valentín</u> v. <u>Hospital Bella Vista</u>, 254 F.3d 358, 362-63 (1st Cir. 2001). Under

this rule, a wide variety of challenges to the court's subject matter jurisdiction may be asserted, among them those based on sovereign immunity, ripeness, mootness, and the existence of a federal question. Id. (citations omitted). When faced with a jurisdictional challenge, this court must "[g]ive weight to the well-pleaded factual averments in the operative pleadings . . . and indulge every reasonable inference in the pleader's favor." Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007).

**Applicable Law and Analysis**

*Mootness*

As said, the Municipality avers that the Coalition's second cause of action has become moot. The Court tackles this unconvincing but jurisdictional argument first. See e.g., Steel Co v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon a law's meaning or constitutionality when it has no jurisdiction to do so is, by very definition, an *ultra vires* act.") (citations omitted).

Mootness, a jurisdictional flaw, is grounded on Article III case or controversy considerations. United States v. Reid, 369 F.3d 619, 624 (1st Cir. 2004) (citing Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004)). It is also rooted in "[e]quitable considerations stemming from the impracticability of fashioning fair and effective judicial relief." In re Public Serv. Co., 963 F.2d 469, 471 (1st Cir. 1992). "If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) (citing County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). Put differently, a case becomes moot when the controversies are no longer live, or the parties lack a cognizable interest in the outcome. Reid, 369 F.3d at 24; City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000). Importantly, "[t]he burden of establishing mootness rests squarely on the party raising it, and the 'burden is a heavy one.'" Mangual, 317

F.3d 45 at 60 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)). Therefore, the party raising mootness must prove that it is "[a]bsolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968) (internal quotation marks omitted)).

As previously indicated, see *supra* n. 1, the Coalition conceded, as it must have, that its first cause of action—the Municipality's failure to submit the Program for EPA approval—has become moot. Hence, the mootness inquiry is circumscribed to the remaining claim, i.e., whether the Municipality has *implemented* the Program. The Municipality seems to posit that it has already complied with the Program's implementation. This *ipse dixit*, however, finds no support in the record. Thus, the Municipality has come nowhere near overcoming its heavy burden of proving the implementation of *each* of the six control measures mandated by the Permit; it has marshaled no documentary evidence to explain the implementation status or any information whatsoever regarding such measures.

To advance its contentions, the Municipality relies exclusively on the Letter. But such single-minded reliance is misplaced. The two-paragraph Letter, sent almost six months *after* the filing of this action, says nothing about what has been implemented, by whom, where or when. As described above, it merely approbates the Program (which had been due for over *four years*) and moots the Coalition's first cause of action. See Docket # 19-1; see also *supra* n. 1. But it certainly falls short of proving the Municipality's compliance with the Permit and the Order. Considering its lethargic endeavors in securing the EPA's approval of the Program, moreover, the Municipality could feasibly forestall its implementation—as it has done for the past four years. "A party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior. City News & Novelty v. City of Waukesha, 531 U.S. 278, 286 n. 1 (2001); see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,

484 U.S. 49, 66-67 (1987) ("Mootness doctrine . . . protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'") (citations and internal quotation marks omitted)).

At any rate, the Municipality flatly contradicts itself by arguing that because of the allegedly impending consent decree, this action "[w]ill soon become moot . . . ." Docket # 19, p. 9. Of course, a case can become moot when the parties jointly settle all of the claims, see e.g., U.S. Bancorp Mortg. Co. v. Bonner Mall Pshp., 513 U.S. 18, 23 (1994); Lake Coal Co. v. Roberts & Schaefer Co., 474 U.S. 120 (1985) (*per curiam*); but, if this action will become moot sometime in the near future, then it would be a logical impossibility for it to be moot in the present.

Because the Municipality has failed to demonstrate its compliance with the Order, its mootness argument is unsustainable. The Court need go no further. The Municipality has failed its onerous burden of showing how the Coalition's second cause of action has become moot. Its motion to dismiss on this end is thus **DENIED**.

*Diligent Prosecution of the EPA*

As previously indicated, the Municipality argues that Plaintiffs have alleged insufficient facts from which this court may infer a lack of diligence by the EPA. Docket # 19, p. 7. The Coalition disagrees, contending that its amended complaint includes multiple averments that specifically support the conclusion that the Order has not been diligently prosecuted. Docket # 20, p. 7. Although a close call, the Coalition has the winning argument.

In enacting the Clean Water Act, Congress sought to "restor[e] and maintain[ain] the chemical, physical, and biological integrity of the [United States'] waters." 33 U.S.C. § 1251(a). To that effect, it proscribed the "[d]ischarge of any pollutant by any person unless done in compliance with some provision of the Act." S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of

Indians, 541 U.S. 95, 102 (2004) (quoting 33 U.S.C. § 1311(a)). The CWA provides that, barring authorization "'the discharge of any pollutant [into navigable waters] by any person shall be unlawful.'" United States Pub. Interest Research Group v. Atl. Salmon of Me., 339 F.3d 23, 26 (1st Cir. 2003) (quoting 33 U.S.C. §§ 1311(a), 1362(12) (2000) (alterations in original)). As relevant here, the Act "[e]stablished a [NPDES] that is designed to prevent harmful discharges into the Nation's waters." Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 650 (2007). And "[t]he NPDES requires dischargers [such as the Municipality] to obtain permits that place limits on the type and quantity of pollutants that can be released into the . . . [navigable] waters." S. Fla. Water Mgmt. Dist., 541 U.S. at 102.

As to the Act's enforcement, § 505 of the CWA, authorizes citizens to bring suit to enforce the foregoing provisions. See 33 U.S.C.S. § 1365(a)(1). But no suit may be commenced under this subsection "[i]f the [EPA] Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order . . . ." Id. § 1365(1)(B).

In the leading case of North and South Rivers Watershed Association, Inc. v. Town of Scituate—a case heavily relied upon by the Municipality—the First Circuit, drawing on the seminal case of Gwaltney of Smithfield, Ltd., 484 U.S. 49 at 60, sketched the interrelation between governmental and § 505 citizen enforcement actions:

> The primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act. Congress has found it necessary expressly to "recognize, preserve and protect the primary responsibility and rights of the States to prevent, reduce and eliminate pollution." It follows that "the citizen suit [under section 505] is meant to supplement rather than to supplant governmental [enforcement] action." Presumably, then, when it appears that governmental action under either the Federal or comparable State Clean Water Acts begins and is diligently prosecuted, the need for citizen's suits vanishes.

949 F.2d 552, 555 (1st Cir. 1991) (alterations in original; emphasis and citations omitted). Similarly, in the analogous case of Surcco v. Prasa, also cited by the Municipality, the court framed the EPA's diligent prosecution test as not "[w]hether the EPA's actions can be effectively prosecuted in a Federal or State court. A sharper focus on the issue is whether or not *EPA was diligently prosecuting an enforcement action at the time this suit was filed*." 157 F. Supp. 2d 160, 169 (D.P.R. 2001) (emphasis added).

Importantly, in both Surcco and Scituate, defendants brought forth sufficient evidence regarding their compliance with the administrative orders at issue. In Surcco, for instance, the defendants *produced evidence* of (1) "compliance through expenditures"; and (2) multiple reports rendered by the EPA "[d]etailing what projects are being carried out to repair the sources of the violations." 157 F. Supp. 2d at 170. By like token, in Scituate defendant proved (at the summary judgment stage) its compliance with the order; it submitted, among other compelling evidence, "[m]onthly, weekly, and daily test results from groundwater monitor wells . . . ." 949 F.2d at 557. Defendant also spent close to one million dollars to plan the new treatment facility. Id. Accordingly, the Surcco and Scituate Courts found the citizen's suit barred by the *diligent* prosecution of the EPA and the Massachusetts Department of Environmental Protection, respectively.

As correctly alleged by the Coalition, in the aforementioned cases one principle is pellucid: diligent prosecution requires evidence about specific measures taken to redress a violation and a substantial and ongoing response by the enforcement agency. See Scituate, 949 F.2d at 557. Here, the Municipality has produced no such evidence. Again, the only *document* provided by the Municipality in support of the contention is the Letter. But, as elucidated above, the Letter merely evinces a partial compliance with the Order; it bespeaks nothing with respect to the Municipality's obligation to submit to the EPA a report detailing, among other things, the

costs of the Notice of Intent and the Program. Nor does it specify with sufficient details, the Municipality's implementation of the six control measures mandated by the Order.

To be sure, the EPA did "enforce" the Act when it issued the Order on February 7, 2008. But, according to the complaint, three years later—at the time the Coalition filed this action on June 21, 2011—the EPA had apparently ceased enforcing the Order, as it had done nothing to follow-up on it. The record shows, for instance, that the EPA imposed no fines or sanctions upon the Municipality, notwithstanding its outrageous dilatory conduct. *Once the complaint was filed*, however, the Municipality apparently reacted: it finally submitted the (amended) Program on November 14, 2011, although it had been due since *May 7, 2008*. The filing of this action, therefore, has evidently pressured the Municipality's compliance with the Order. Cf. Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988) (citizen's suits help "ensure that the agencies fulfill their duties under the CWA responsibly").

Because the Municipality has come forward with no evidence regarding its compliance with the Order, the Court finds that the Coalition has averred sufficient facts from which this court may infer a lack of diligence by the EPA. And taking all the Coalition's well-pleaded factual allegations as true, it has pleaded adequate factual material to support a reasonable inference, namely that, since it issued the Order in February 2008, the EPA's prosecution has been rather lukewarm. In light of the foregoing, the collective weight of the Coalition's factual allegations, nudge its general tort claims "across the line from conceivable to plausible." Iqbal, 129 S.Ct at 1951. Consequently, the Municipality's motion to dismiss is **DENIED**.

*Stay of proceedings*

As a fallback, the Municipality posits that this court should stay the proceedings for no more than ninety days to allow for the completion of a consent decree currently being negotiated between the United States Department of Justice, the EPA, and the Municipality. In support of

its request, the Municipality stated—*ninety-eight days ago*—that the consent decree "[s]hould be signed within *a couple of months* . . . ." Docket # 19, p. 9 (emphasis added).

Barring a statute or rule to the contrary, this court possesses an inherent power to stay pending litigation. See Microfinancial, Inc. v. Premier Holidays Intern., Inc., 385 F.3d 72, 77 (1st Cir. 2004) (citations omitted). A typical reason for a stay is the pendency of a related proceeding in another tribunal. Id. Furthermore, the stay's duration must be reasonable, and courts must guarantee that competing equities are weighed and balanced, among the other factors enumerated in Microfinancial, Inc. See id. at 78 (construing the six factors that "[t]ypically bear on the decisional calculus . . .").

The Coalition rightfully reminds this court that, on November 22, 2011, the Municipality requested a stay of ninety days, arguing that the consent decree would be ready within that period. But no consent decree was ever filed, or else we probably would not be here today. See e.g., Environmental Conservation Organization v. City of Dallas, 529 F.3d 519, 529 (5th Cir. 2008) (affirming dismissal of a citizen's suit because a subsequently filed consent decree addressed the same matters). Given this reality, the Court is skeptical about the Municipality's optimism—that the consent decree will be filed "within a couple of months." This court nonetheless recognizes that "[d]uplicative enforcement actions . . . divert State resources away from remedying violations in order to focus on the duplicative effort." Scituate, 949 F.2d at 556. Moreover, the Court defers to the course of action elected by the governmental agencies in charge of enforcing the Order. While the Court sympathizes with the Coalition's realistic concern that "[w]ithout the pressure generated by this case we believe that [the Municipality] will go back to its old habits[,]" Docket # 20, p. 19, it nevertheless agrees with the Municipality's petition for additional time to resolve this matter by means of a consent decree.

**CIVIL NO. 11-1593 (SEC)**                          **Page 14**

After a careful balancing of interests, however, the Court **DENIES** the Municipality's request to stay the proceedings, given the Municipality's previous noncompliances with its own estimates. But the Court will give the Municipality **thirty days**, until **5/31/2012**, to finalize the consent decree. Failure to complete the consent decree by this date will kick in the following case management deadlines: Objections to deadlines due by **6/29/2012**; Outstanding Pleadings due by **7/2/2012**; Amended Pleadings and Joinder of Parties due by **7/20/2012**; Rule 26 Meeting Report due by **7/27/2012**; Discovery due by **12/14/2012**; Motions for Summary Judgment due by **1/25/2013**; Joint Proposed Pretrial Order due by **2/25/2013**. The Case Management and Settlement Conference will be scheduled in due time.

Let it be perfectly clear: the Court will do everything in its power to ensure the Municipality's full compliance with the Order and the Act. The protection of the environment deserves nothing less.

**Conclusion**

For the reasons stated, the Municipality's motion to dismiss is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of May, 2012.

                                       *S/ Salvador E. Casellas*
                                       SALVADOR E. CASELLAS
                                       U.S. Senior District Judge